UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DARNELL SCOTT,

      Plaintiff,

  v.              Case No. 25-cv-243-pp

CPS WILLIAMS, *et al.*,

      Defendants.

**ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Plaintiff Darnell Scott, who is incarcerated at Racine Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants failed to protect him from an attack by another incarcerated person. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

## I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On February 25, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $89.78. Dkt. No. 7. On March 14, 2025, the court received the full $405 filing fee. Because the plaintiff has paid the full fee, the court will deny his motion for leave to proceed without prepaying the filing fee as moot.

## II.    Screening the Complaint

### A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The plaintiff filed two documents—the court received both on February 19, 2025. The first document has the words "ATTACHMENT 1" at the top of the first page. Dkt. No. 1 at 1. The document appears to be this court's form complaint, on which the plaintiff appears to have handwritten information. Id. at 1-5. The caption of this document—which the court will call "the complaint"—names as defendants CPS Williams, Security Director William Pollard, Brittney Cobbs, Olivia Rumsy, Jason Moore, Unit Manager Melgosa and Russell Kamkinski. Dkt. No. 1 at 1–2. The complaint contains one short

paragraph of allegations. Id. at 2. The plaintiff alleges that "[a]ll defendants" failed to protect him on March 20, 2024, while he was incarcerated at Racine. Id. He does not say what they failed to protect him from, and he says that he does not "know why [he] was attack[ed]." Id. He seeks $150,000 in damages against all defendants in their individual and official capacities. Id. at 4.

The second document the court received is *not* on the court's official form. Dkt. No. 2. It is a four-page, typed, single-spaced document titled "CIVIL RIGHTS COMPLAINT PURSUANT TO TITLE 42 USC ss 1983." Id. at 1. The clerk's office docketed this document as a supplement to the complaint. Dkt. No. 2. But this "supplement" is a full, typed complaint that contains much more detail than the first document (the complaint). The "supplement" names as defendants CPS Williams, Security Director Pollard and Unit Manager Melgosa. Id. at 1. It also names three John Doe correctional officers and Racine Deputy Warden Melman as defendants. Id. at 1–2. It does not include the other defendants named in the first document.

The supplement alleges that on March 30, 2024, another incarcerated person assaulted the plaintiff from behind when the plaintiff was headed to the shower. Id. at ¶6. The plaintiff alleges that unnamed correctional officers assigned to his housing unit "witnessed the assault and stood by without intervening or attempting to stop the assault." Id. at ¶7. The plaintiff alleges that the other incarcerated person struck him over thirty times in his face and head with a metal chain and lock, resulting in severe injuries for which the plaintiff was hospitalized. Id. at ¶¶8–9. The plaintiff says that a third

incarcerated person intervened and shielded the plaintiff from further attack. Id. at ¶10. The plaintiff submitted a declaration from this incarcerated person, who avers that Security Director Pollard thanked him "for doing what no one eles [*sic*] would and stopping the attack." Dkt. No. 5 at ¶6.

The plaintiff alleges that the weapon that his attacker used was a chain and metal lock affixed to lockers at Racine that are designed not to be removed. Dkt. No. 2 at ¶13. He says that "[t]he defendants" had a duty to ensure that the locks were not removed or tampered with and failed to protect him from the attack by checking the lockers for signs of tampering. Id. at ¶¶14–17. The plaintiff asserts that "[d]efendants named herein" failed to protect him "and similar situated inmates from assaultive behavior by other inmates." Id. at ¶18. He says that the defendants "continue to have locks with chains on lockers without conducting daily inspections of inmate living quarters to determine if they are being tampered with or removed." Id. at ¶18. The plaintiff reiterates his request for $150,000 in total damages against the defendants in their individual and official capacities. Id. at ¶20.

C.     Analysis

The complaint (Dkt. No. 1) does not state a claim. It contains only one brief paragraph of general allegations against all defendants. It contains no facts tying any defendant to specific acts of misconduct, nor does it provide any detail about the harm from which they failed to protect the plaintiff. These general allegations do not state a claim against any defendant in any capacity. See Iqbal, 556 U.S. at 678; Taylor v. Ways, 999 F.3d 478, 493 (7th Cir. 2021).

The "supplement" provides significantly greater detail about the plaintiff's claim. But it does not name the same defendants, and it is dated about a week before the complaint. Compare Dkt. No. 1 at 5 (dated Feb. 7, 2025), with Dkt. No. 2 at 4 (dated Jan. 31, 2025).[1] The "supplement" is, in effect, an amended complaint against the defendants named in the supplement but not the defendants named in the "complaint." The court does not allow a party to litigate piecemeal; in other words, it does not allow a plaintiff to provide additional details, defendants or claims "bit by bit in different pleadings." Sales v. Johnson, Case No. 23-cv-397, 2024 WL 1051326, at *1 (E.D. Wis. Mar. 11, 2024) (citing Civil Local Rule 15(a) (E.D. Wis.); Markovic v. Milwaukee Secure Det. Facility, Case No. 19-CV-675, 2019 WL 6729198, at *1 (E.D. Wis. Dec. 11, 2019); Jenkins v. City of Kenosha, Case No. 17-CV-1779, 2018 WL 2727904, at *3 (E.D. Wis. June 6, 2018)). The plaintiff must reallege any facts or claims that he wants the court to consider in his latest complaint, or the court will consider the plaintiff to have abandoned those facts, claims and defendants. Because the court concludes that the plaintiff does not state a claim for relief in either his complaint or his supplement, the court will discuss the allegations in his supplement and explain why even those detailed allegations do not state a claim.

The court analyzes the plaintiff's allegations that the defendants failed to protect him under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Farmer v. Brennan, 511 U.S. 825, 832–33 (1994) (quotations

---

[1] The supplement is dated January 31, 2024, but the court can infer that the plaintiff meant to type 2025 because the events described in both the complaint and the supplement allegedly occurred in March 2024.

omitted) (noting that prison officials "must take reasonable measures to guarantee the safety of the inmates" and "to protect prisoners from violence at the hands of other prisoners"). An Eighth Amendment claim consists of both objective and subjective components. Farmer, 511 U.S. at 834. To satisfy the objective component, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The plaintiff must allege more than that he was "attacked by another inmate," Dale v. Poston, 548 F.3d 563, 569 (7th Cir. 2008), or that he faced "a generalized risk of violence," Wilson v. Ryker, 451 F. App'x 588, 589 (7th Cir. 2011) (citing Brown v. Budz, 398 F.3d 904, 909, 913 (7th Cir. 2005)). The plaintiff must show that there was "a tangible threat to his safety or well-being" or, in other words, a risk "so great that it is almost certain to materialize if nothing is done." Id. (citing Grieveson v. Anderson, 538 F.3d 763, 777 (7th Cir. 2008) and Brown, 398 F.3d at 911 (internal quotations omitted)).

To satisfy the subjective component, the plaintiff must demonstrate that the officials acted with the requisite intent—that they had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. Prison officials cannot be liable under the Eighth Amendment for failing "to alleviate a significant risk that [they] should have perceived but did not." Id. at 838. The plaintiff must allege facts demonstrating that the officials subjectively knew of an excessive risk of harm to the plaintiff's health or safety and disregarded that risk. Id. at 837; Perez, 792 F.3d at 776.

7

The supplement does not state an Eighth Amendment claim against the defendants for failing to protect the plaintiff from the attack. The plaintiff alleges that he was spontaneously attacked in March 2024 when he was headed to the shower. He does not allege that he had any reason to anticipate this attack, nor does he say whether he told Racine staff that he feared an attack from the other incarcerated person. The plaintiff says that staff failed to intervene and stop the attack, which ended only after another incarcerated person intervened. These allegations do not suggest that the defendants were on notice of a specific threat to the plaintiff's safety and failed to protect him from that threat. The plaintiff's allegations that the officers failed to protect him from this "generalized risk of violence" is not enough to state a claim against them for failing to protect him.

It is possible that the plaintiff would be able to state a claim against the officers who he says witnessed the assault and failed to stop it; those allegations suggest the officers were aware of the immediate harm to the plaintiff and could have intervened. See Schillinger v. Kiley, 954 F.3d 990, 995 (7th Cir. 2020) (citing Velez v. Johnson, 395 F.3d 732, 734–36 (7th Cir. 2005)). But here the supplement suffers from the same problem as the complaint—it frames the plaintiff's allegations only generally against "defendants" or "all defendants." The plaintiff does not explain what any defendant specifically did or failed to do that violated his rights. His general allegations against "defendants" are insufficient to state a claim against any of them. See Grieveson v. Anderson, 538 F.3d 763, 778 (7th Cir. 2008) (a plaintiff cannot rely on "vague references" to defendants

"without specific allegations tying the individual defendants to the alleged unconstitutional conduct").

The plaintiff also seeks to proceed against the defendants in their official capacities. Claims against officials in their official capacities represent another way to plead an action against the entity that they represent or for which they work. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The court construes the official capacity claim as having been brought against the Department of Corrections, the agency for which the defendants work. Id. at 165–66. And because claims against the DOC are "no different from a suit against the State itself," the court construes this claim as if the plaintiff had brought it against the State of Wisconsin. See Will, 491 U.S. at 71 (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55). But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. That means that the plaintiff cannot recover damages against the defendants in their official, versus their individual, capacities. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003). Because damages are the only relief that the plaintiff seeks, he cannot proceed against the defendants in their official capacities.

Finally, the plaintiff alleges that the defendants failed to protect other incarcerated persons at Racine. But the plaintiff lacks standing to assert the rights of any other person. See Lewis v. Casey, 518 U.S. 343, 349–50 (1996);

9

<u>Massey v. Helman</u>, 196 F.3d 727, 739–40 (7th Cir. 1999). He may sue only for violations of his own rights.

Because neither the complaint nor the supplement states a claim, the court will dismiss them. But if the plaintiff were to file an amended complaint that included more detailed facts, it is possible that he might be able to state a claim against some of the defendants. The court will give the plaintiff **a final opportunity** to amend his complaint to correct the deficiencies the court has identified and to better explain the claims in the two pleadings he has filed. When writing his amended complaint, the plaintiff should give the court enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's amended complaint does not need to be long or contain legal language, citations to statutes or cases or exhibits. But it does need to give the court and each defendant notice of what each defendant allegedly and specifically did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must use this form to prepare his amended complaint. He must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those

pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. **The amended complaint takes the place of the prior complaint and supplement and must be complete by itself.** The plaintiff may not refer the court back to his original complaint or his supplement. He must repeat in the amended complaint any of the facts from the original complaint or the supplement that he believes are necessary to his claims.

III.    **Conclusion**

The court **DENIES AS MOOT** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **CONCLUDES** that the plaintiff's complaint and supplement fail to state a claim. Dkt. Nos. 1, 2.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive it* by the end of the day on **June 20, 2025**. If the court receives an amended complaint by the end of the day on June 20, 2025, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the end of the day on June 20, 2025, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include with this order a guide prepared by court staff to address common questions that arise in cases filed by incarcerated persons.

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Entitled "Answers to Prisoner Litigants' Common Questions," this guide

contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 14th day of May, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**