UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DARNELL SCOTT,

                              Plaintiff,

        v.                                              Case No. 25-cv-243-pp

BRITTNEY COBB, *et al.*,

                              Defendants.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 11) UNDER 28 U.S.C. §1915A AND DISMISSING CASE FOR FAILURE TO STATE A CLAIM**

On May 14, 2025, the court screened plaintiff Darnell Scott's *pro se* complaint and supplement under 42 U.S.C. §1983 and determined that neither document stated a claim for relief. Dkt. No. 10. The court gave the plaintiff "a final opportunity to amend his complaint to correct the deficiencies the court has identified and to better explain the claims in the two pleadings he has filed." Id. at 10 (emphasis omitted). On June 16, 2025, the court received the plaintiff's amended complaint. Dkt. No. 11. This decision screens the amended complaint.

**I.      Screening the Amended Complaint**

      A.      Federal Screening Standard

      As the court explained in the previous order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief

may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. <u>Cesal</u>, 851 F.3d at 720

(citing <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)).

  B. <u>The Plaintiff's Allegations</u>

  The amended complaint names as defendants correctional officers

Brittney Cobb and Olivia Ramsy, Sergeant Jason Moore, three John Doe

defendants and one Jane Doe defendant. Dkt. No. 11 at 1. The plaintiff sues

the defendants in their individual and official capacities. <u>Id.</u> at 6.

  The amended complaint realleges that on March 30, 2024, another

incarcerated person assaulted the plaintiff from behind with a metal lock when

the plaintiff was headed to the shower. <u>Id.</u> at 2. The plaintiff alleges that Officer

Cobb witnessed the assault from about fifty feet away but "did not intervene to

protect plaintiff from the continuous assault" despite "the plaintiff's cries for

help." <u>Id.</u> He later says that Cobb gave "verbal commands" for the attacker to

stop. <u>Id.</u> at 4. He states that Officer Ramsy also was present, witnessed the

assault, walked closer and told the attacker to "put down the lock." <u>Id.</u> at 2–3.

But the attacker continued to "bash[] the plaintiff[']s head sending blood across

the dayrooms floor and walls." <u>Id.</u> at 3. The plaintiff says that he cried out for

help, but that neither officer used incapacitating spray or protected him from

further injury. <u>Id.</u> He alleges that the assailant continued to attack him, and

that the plaintiff suffered a broken eye socket and required stitches and

staples. <u>Id.</u>

  The plaintiff alleges that other incarcerated persons ran to the sergeant

station to get help from Sergeant Moore. <u>Id.</u> Moore allegedly refused to leave the

sergeant station, saying that he did not want to "get[] anyone else's blood on [him]." Id. Moore instead called support staff to come and address the situation. Id. at 4. The plaintiff says that another incarcerated person shielded him from the attacker using a chair until support staff arrived to subdue the attacker. Id. The plaintiff says that the incarcerated person who attacked him was able to strike him thirty to forty times uninterrupted before support staff showed up. Id. at 4. He says that it took the Doe support staff ten minutes to arrive, and the delay worsened his resulting injuries. Id. He says that institution policy required support staff to respond to the scene within two minutes. Id. The plaintiff asserts that the officers and support staff failed to protect him from the assault from the other incarcerated person. Id. at 5.

The plaintiff seeks $150,000 in compensatory and punitive damages. Id. at 6. He also seeks an injunction ordering the prison to preserve the video surveillance that he says "proves [his] assertions." Id.

C.    Analysis

In its previous order, the court explained the plaintiff's allegations that the defendants failed to protect him from the attack did not state a claim. Dkt. No. 10 at 6–7. But the amended complaint alleges not that the defendants failed to *prevent* the attack but that they failed to respond to and stop the attack after it had begun. The court explained in the previous order that it was "possible that the plaintiff would be able to state a claim against the officers who he says witnessed the assault and failed to stop it; those allegations suggest the officers were aware of the immediate harm to the plaintiff and could have intervened."

4

Id. at 8 (citing Schillinger v. Kiley, 954 F.3d 990, 995 (7th Cir. 2020); and Velez v. Johnson, 395 F.3d 732, 734–36 (7th Cir. 2005)).

The court analyzes these allegations under the Eighth Amendment, which the court previously explained "consists of both objective and subjective components." Id. at 7 (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)); see Estelle v. Gamble, 429 U.S. 97, 104 (1976). To satisfy the objective component, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. To satisfy the subjective component, the plaintiff must demonstrate that the officials acted with the requisite intent, that is, that they had a "sufficiently culpable state of mind." Id. Negligence—even gross negligence—is not enough to violate the Constitution. Id. at 835–36. The officials' action instead "must be so inadequate that it amounts to a reckless disregard for the risk . . . and 'effectively condones the attack.'" Giles v. Tobeck, 895 F.3d 510, 513 (7th Cir. 2018) (citing Fisher v. Lovejoy, 414 F.3d 659, 662 (7th Cir. 2005); and quoting Santiago v. Walls, 599 F.3d 749, 756 (7th Cir. 2010)).

The plaintiff alleges that Officers Cobb and Ramsy witnessed the assault and verbally commanded the assailant to stop but took no other action. He says, for example, that they did not use incapacitating spray to attempt to stop the attack. The plaintiff alleges that Cobb was about fifty feet away when she yelled at the attacker to stop. He does not say how close Ramsy was, but he alleges that she came closer to command the attacker to drop the lock that he used to attack the plaintiff.

5

These allegations do not suggest that Cobb or Ramsy were indifferent to the risk of harm to the plaintiff. The plaintiff's allegations suggest that Cobb and Ramsy reacted appropriately with verbal commands from a safe distance but stopped short of intervening to stop the attacker, who was armed with a metal lock. They were not required to intervene in this dangerous circumstance. "[C]orrectional officers who are present during a violent altercation between prisoners are not deliberately indifferent if they intervene with a due regard for their safety." Shields v. Dart, 664 F.3d 178, 181 (7th Cir. 2011). The officers were "'not required to take the unreasonable risk of attempting to break up a fight between two inmates when the circumstances make it clear that such action would put [them] in significant jeopardy.'" Id. (quoting Guzman v. Sheahan, 495 F.3d 852, 858 (7th Cir. 2007), abrogated on other grounds by Kemp v. Fulton County, 27 F.4th 491, 497 (7th Cir. 2022)). The officers reasonably waited for back-up from the support staff "rather than jump into the fray" themselves. Giles, 895 F.3d at 514; see Davis v. Rook, 107 F.4th 777, 782 (7th Cir. 2024) (affirming dismissal of claim against officer who "waited for back-up assistance before injecting himself into the middle of the [two-on-one] beatdown"). Although the plaintiff clearly wanted the officers to do more to stop the attack, they were not deliberately indifferent by not taking further steps to stop the attack. See Giles, 895 F.3d at 514 (quoting Guzman, 495 F.3d at 857) (explaining that "the 'mere failure of the prison official to choose the best course of action does not amount to a constitutional violation'").

The court also finds that the plaintiff has not stated a claim against Sergeant Moore. The plaintiff alleges that Moore witnessed the attack from the sergeant station and declined to intervene, saying that he did not want to risk getting blood on him. The plaintiff submitted declarations from two incarcerated persons who agree that Moore said this. Dkt. No. 12 at ¶7; Dkt. No. 14. That alleged comment comes closer to indifference than the behavior of Officers Cobb and Ramsay, who at least made verbal attempts to stop the attack. But Moore was in the sergeant station rather than on the unit where the assault occurred, and the plaintiff says Moore is the one who called support staff. Moore was not required to leave the safety of the sergeant station and attempt to stop the attack before support staff arrived. See Shields, 664 F.3d at 181 (holding that officer who did not "command . . . detainees to stop the attack" and instead "monitor[ed] the fight from the secure area until other officers arrived" was not deliberately indifferent); Simmons v. McCulloch, 546 F. App'x 579, 582 (7th Cir. 2013) (finding it reasonable for jail guards "to call promptly for backup and monitor the fight from the safety of the bubble" after detainee "set upon [another] prisoner with a razor"). Although Moore *could have* taken other action to intervene, he was not *required* to do so to avoid Eighth Amendment liability.

Nor does the plaintiff state a claim against the Doe support staff who he says arrived late on the scene. The plaintiff says it took ten minutes for the support staff to arrive, but institution policy required them to arrive within two minutes. The plaintiff does not allege that support staff intentionally delayed

responding to the scene or that they could have responded quicker but failed to. Their delay in reporting to the attack, on its own, might suggest they acted negligently, but it is "insufficient to constitute deliberate indifference." <u>Shields</u>, 664 F.3d at 182 (holding that officers' fifteen-to-twenty-minute delay in arriving at scene of attack was "troubling" but did not constitute deliberate indifference). The plaintiff also has not stated a claim regarding the alleged institutional policy requiring a response within two minutes because §1983 protects against only constitutional violations, not against violations of prison policy. <u>See</u> <u>Estate of Simpson v. Gorbett</u>, 863 F.3d 740, 746 (7th Cir. 2017).

Because the plaintiff's amended complaint does not state a claim against any defendant, he is not entitled to a preliminary injunction. The court will dismiss this case and will not allow the plaintiff another opportunity to amend his complaint.

## II. Conclusion

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the amended complaint fails to state a claim. Dkt. No. 11.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **thirty days** of the entry of judgment. <u>See</u> Federal Rules of Appellate Procedure 3, 4. This court may

extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court.* See Fed. R. App. P. 24(a)(1). The Court of Appeals may assess the plaintiff another "strike" if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 2nd day of July, 2025.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**